**The below described is SIGNED.**

**Dated: July 10, 2006**

_____
**JUDITH A. BOULDEN
U.S. Bankruptcy Judge**



## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Number: 06-20001 |
| **TRAVIS LANE CURTIS,** | Chapter 13 |
| Debtor. | |

**MEMORANDUM DECISION OVERRULING OBJECTIONS
TO PROOFS OF CLAIM NO. 2 AND NO. 10, AND DENYING
CONFIRMATION OF THE DEBTOR'S CHAPTER 13 PLAN**

Before the Court are the objections of Travis Lane Curtis (Debtor) to Proof of Claim No. 2 filed by Navistar Financial Corporation (Navistar) and Proof of Claim No. 10 filed by DaimlerChrysler Financial Services Americas, L.L.C. (Chrysler)(collectively the "Objections"), and the Debtor's request for confirmation of his chapter 13 plan. There are two issues common to the Objections and the confirmation of the Debtor's plan. The first issue is whether the hanging paragraph found at the end of 11 U.S.C. § 1325(a)[1] (hanging paragraph) requires a creditor to hold a purchase money security interest in "any other thing of value" in order to prevent a debtor from cramming down a secured claim under § 506. The second issue is whether

---

[1] All future statutory references are to title 11 of the United States Code unless otherwise indicated.

I:\LAW\OPINIONS\Opin0484.wpd

Navistar and Chrysler hold purchase money security interests in their respective collateral, which happen to be motor vehicles that the Debtor uses in his business and were purchased within one year of filing.

The Debtor argues that the hanging paragraph requires a creditor whose collateral was purchased within one year preceding the filing and consists of "any other thing of value" to possess a purchase money security interest in the collateral in order to avoid being crammed down under § 506. The Debtor also argues that, in this state, a creditor can never have a purchase money security interest in a motor vehicle since a creditor can only perfect its interest through compliance with the Utah Motor Vehicle Act (Motor Vehicle Act).[2] Therefore, the Debtor argues, neither Navistar nor Chrysler have a purchase money security interest in their respective collateral, and the hanging paragraph does not prevent the Debtor from cramming down their claims. Navistar and Chrysler contend that they do not need a purchase money security interest to avoid the cram down of their claims and, regardless, that they do have purchase money security interests in their respective collateral.

The issue of whether the hanging paragraph requires a creditor to hold a purchase money security interest in "any other thing of value" in order to avoid being crammed down is a matter of first impression in this Court.[3] The Court has carefully considered the parties' arguments and the issues presently before it, and has made an independent inquiry into the applicable law. The Court now enters the following Memorandum Decision.

---

[2]   Utah Code Ann. § 41-1a-101 (2006) et seq.

[3]   The Court has also been unable to find where any other court has decided this issue.

## I. BACKGROUND

The material underlying facts are undisputed. On February 4, 2005, the Debtor purchased a 2001 Kenworth 900L semi-truck tractor (Kenworth Tractor) for $68,985. The Debtor financed this purchase with a loan from Navistar and signed a security agreement granting it a security interest in the Kenworth Tractor. Navistar later perfected its security interest by notation of its lien on the Kenworth Tractor's title as required by § 41-1a-601 of the Motor Vehicle Act. One day later, the Debtor purchased a 1999 Peterbilt 379 semi-truck tractor (Peterbilt Tractor) for $50,934.90. The Debtor financed this purchase through a loan from Chrysler by again signing a security agreement and granting Chrysler a security interest in the Peterbilt Tractor. Chrysler also perfected its security interest by notation of its lien on the Peterbilt Tractor's title. Both the Kenworth Tractor and the Peterbilt Tractor (collectively the Tractors) were used in the Debtor's business and were not for personal use. They are not so called "910-day vehicles,"[4] therefore Navistar and Chrysler may avoid being crammed down only if the Tractors qualify as "any other thing of value" purchased within one year of the filing of the bankruptcy petition.

The Debtor filed his chapter 13 petition on January 1, 2006, only eleven months after purchasing both Tractors. At the time of filing, the Debtor still owed $54,177.32 to Navistar for the Kenworth Tractor and $37,704.05 to Chrysler for the Peterbilt Tractor. Both Navistar and Chrysler timely filed proofs of claim for these respective amounts and declared their status as secured creditors. The Debtor, however, proposed a plan that attempts to cram down the value of their claims. The Debtor asserts that the value of the Kenworth Tractor is $39,000 and the

---

[4] A "910-day vehicle" is a motor vehicle, secured by a purchase money security interest, that was acquired for the debtor's personal use within 910 days preceding the filing of the bankruptcy petition.

value of the Peterbilt Tractor is $27,000, and his plan proposes to pay each claim accordingly with the balance of the claims paid as unsecured. Navistar and Chrysler have objected to confirmation of the plan on the basis that it does not comply with § 1325(a) because it fails to pay their secured claims in full. They argue that the Debtor's proposed plan violates § 1325(a) because they have collateral consisting of "any other thing of value" purchased within one year preceding the filing of the Debtor's bankruptcy petition meaning that their claims cannot be crammed down under the hanging paragraph.

## II. DISCUSSION

This is a core matter and the Court may enter a final order.[5] The hanging paragraph of § 1325(a) was added to the Bankruptcy Code with the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA). This paragraph states that:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

Section 506 allows a debtor to bifurcate secured claims and "cram down" the secured portion of the debt to the value of the collateral. The remaining balance is then reclassified and paid through the plan as a non-priority unsecured claim. The hanging paragraph, however, prevents a debtor from cramming down a secured claim in two situations. The first situation is where the creditor has a purchase money security interest in a 910-day vehicle. The second situation, which is a subject of this dispute, involves collateral consisting of "any other thing of value"

---

[5] 28 U.S.C. § 157(b)(2)(K) and (L).

purchased within one year before the filing of the bankruptcy petition. The parties' disagreement centers on whether the hanging paragraph requires that a creditor have a purchase money security interest in "any other thing of value" in order to avoid having its claim crammed down.

The Court finds that a creditor that has collateral in "any other thing of value" purchased within one year before the filing of the petition must possess a purchase money security interest in said collateral to avoid having its claim crammed down under § 506. The Court also finds that both Navistar and Chrysler do have purchase money security interests in their respective collateral. Accordingly, their claims may not be crammed down, and the Debtor's proposed plan does not comply with § 1325(a).

### A. A Creditor Must Possess a Purchase Money Security Interest in Either Type of Collateral

The Debtor has argued that a purchase money security interest is required in either a 910-day vehicle or "any other thing of value" purchased within one year preceding the filing of the bankruptcy petition in order for a creditor to avoid being crammed down under § 506. Navistar and Chrysler both contend that a purchase money security interest is only required for a 910-day vehicle, and that a creditor whose collateral consists of "any other thing of value" cannot be crammed down under § 506 regardless of the nature of its security interest. The Court finds that the plain and unambiguous language of the statute supports the Debtor's argument. Therefore, the Court determines that a creditor claiming protection under the hanging paragraph from a § 506 cram down must hold a purchase money security interest where its collateral consists of "any other thing of value" purchased within one year prior to filing.

### 1.    The Language of the Statute Supports the Debtor's Argument

In attempting to construe the hanging paragraph, the Court "must begin with the language employed by Congress and the assumption that the ordinary meaning of the language accurately expresses the legislative purpose."[6] The Court is also guided by the 10th Circuit's direction that "[w]hen the terms of the statute are clear and unambiguous, that language is controlling absent rare and exceptional circumstances."[7]

The plain and unambiguous language of the hanging paragraph demonstrates that a creditor must have a purchase money security interest in collateral consisting of "any other thing of value" in order to avoid being crammed down under § 506. The second part of the hanging paragraph, which relates to this type of collateral, states ". . . or if collateral for *that debt* consists of any other thing of value . . . ."[8] The use of the adjective "that" in this section indicates a reference to a previously mentioned debt. Specifically, it refers to "the debt that is the subject of the claim" mentioned earlier in the hanging paragraph.[9] The hanging paragraph also requires that a creditor seeking to avoid being crammed down must have "a purchase money security interest securing" this debt. The hanging paragraph then explains that "the debt that is the subject of the claim" is a debt for which the collateral is either a 910-day vehicle or "any other thing of value" purchased within one year prior to the filing of the bankruptcy petition.

---

[6]   *Engine Mfrs. Ass'n. v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004) (quoting *Park N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)).

[7]   *Ansari v. Qwest Commc'ns. Corp.*, 414 F.3d 1214, 1218 (10th Cir. 2005) (quoting *True Oil Co. v. Commissioner*, 170 F.3d 1294, 1299 (10th Cir. 1999)).

[8]   Emphasis added.

[9]   When questioned at the confirmation hearing, neither Navistar nor Chrysler could reasonably explain what the term "that debt" refers to if it does not refer to "the debt that is the subject of the claim."

It is apparent from the plain language that the difference between the first and second part of the hanging paragraph lies in the type of collateral involved in the transaction and not in the nature of the creditor's security interest. It is equally apparent that a creditor must be secured by a purchase money security interest no matter which type of collateral is involved in the transaction. This is the only interpretation of the hanging paragraph that gives a reasonable and unambiguous meaning to the phrase "that debt" and to the hanging paragraph as a whole. Therefore, a creditor seeking to avoid being crammed down by virtue of the protections of the hanging paragraph must have a purchase money security interest in its collateral, whether a 910-day vehicle or "any other thing of value."

### 2. The Argument of Navistar and Chrysler Would Create an Absurdly Expansive Interpretation of the Hanging Paragraph

Where the language of the statute is plain, "the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms."[10] The only absurd result in this case would be to adopt the interpretation of the hanging paragraph that Navistar and Chrysler proffer. Their interpretation would result in an expansive reading of the statute that would abolish the debtor's cram down powers under § 506 for every type of collateral purchased within one year prior to filing: a drastic change from prior law. It is difficult to think that Congress was not aware of the extensive use of "title loans" and other high-interest, short-term, non-purchase money interests in today's sub-prime financing markets. Had Congress intended such an expansive alteration of the Bankruptcy Code, one would think that it would have made this abundantly clear in drafting the hanging paragraph. There is no evidence

---

[10] *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (internal quotations omitted).

that Congress intended this result, and the only logical reading of the statute that gives meaning to the phrase "that debt" is to require that the creditor have a purchase money security interest in one of the two types of collateral listed in the hanging paragraph. The Court, therefore, determines that the hanging paragraph requires that a creditor have a purchase money security interest in "any other thing of value" purchased within one year of filing the bankruptcy petition in order to avoid being crammed down under § 506.

### B. Chrysler and Navistar Have Purchase Money Security Interests under the UCC

The Debtor argues that a security interest in a motor vehicle becomes secured by operation of the Motor Vehicle Act and not Chapter 9a of the Utah Uniform Commercial Code (UCC),[11] which means that it is the Motor Vehicle Act that regulates the creation of security interests in motor vehicles. This leads the Debtor to conclude that creditors can never have a purchase money security interest in a motor vehicle since the Motor Vehicle Act does not provide for such interests. Although imaginative, the Debtor's argument is nevertheless incorrect.

#### 1. The UCC Regulates the Securing of a Creditor's Interest in a Motor Vehicle

Section § 70A-9a-109(1)(a) of the UCC states that "[e]xcept as otherwise provided in Subsections (3) and (4), [the UCC applies] to a transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract." In other words, the UCC regulates the creation of a security interest unless specifically stated otherwise. The Debtor argues that § 70A-9a-109(3)(b) of the UCC dictates that it is the Motor Vehicle Act that actually regulates

---

[11] Utah Code Ann. § 70A-9a-101 (2006) et seq.

security interests in motor vehicles. This section states that the UCC does not apply to the extent that "another statute of this state expressly governs the creation, perfection, priority, or enforcement of a security interest created by this state or a governmental unit of this state."[12] The Debtor reasons that since the Motor Vehicle Act regulates the perfection of a security interest in a motor vehicle,[13] it is that statute that determines how and when a creditor becomes secured. The Debtor's arguments fails for two reasons. The first reason is that § 70A-9a-109(3)(b) of the UCC only applies to transactions where the security interest was created by "this state or a governmental unit of this state" meaning transactions where the state government is the debtor.[14] Neither Navistar nor Chrysler is a governmental debtor so this section is inapplicable to this case. The second reason is that a creditor becomes secured at the moment its security interest attaches to the collateral and not when it is perfected. Thus, it is the UCC and not the Motor Vehicle Act that determines how a creditor becomes secured and whether the creditor has a purchase money security interest.

### 2. A Creditor is Secured When Its Security Interest Attaches to the Collateral

The document that creates the creditor's security interest is the security agreement. The UCC defines a "security agreement" as "an agreement that creates or provides for a security interest."[15] A "security interest" is defined by the UCC as "an interest in personal property . . .

---

[12] Utah Code Ann. § 70A-9a-109(3)(b).

[13] It should be noted that the Motor Vehicle Act does not regulate the perfection of security interests in all motor vehicles. As stated in Utah Code Ann. § 41-1a-601(2), perfection of a security interest "in inventory consisting in part of vehicles subject to registration under this chapter, that are held for sale by a person in the business of selling goods of that kind, shall be perfected under Section 70A-9a-310 [of the UCC]."

[14] *See also* U.C.C. § 9-109 Official Comment 9.

[15] Utah Code Ann. § 70A-9a-102(73).

which *secures* payment or performance of an obligation."[16] These UCC definitions are consistent with the Bankruptcy Code definition that "[t]he term 'security interest' means lien created by an agreement,"[17] and the "[t]erm 'security agreement' means agreement that creates or provides for a security interest."[18] So by UCC definition the security agreement is the document that creates the creditor's interest in the collateral, and it is that interest that secures the obligation. In short, the security agreement creates the security interest and the security interest is what makes the creditor secured.

A creditor, however, cannot claim secured status until the security interest becomes enforceable against the debtor. Security interests, including purchase money security interests, attach to the collateral and become "enforceable against the debtor"[19] at the point that there has been value given for the collateral, the debtor had rights in the collateral or the power to transfer rights to a secured party, and the debtor has signed a security agreement that properly describes the collateral.[20] The use of the phrase "enforceable against the debtor" in § 70A-9a-203(1) and (2) of the UCC demonstrates that the creditor has the ability to enforce the security agreement, including any provisions dictating the right to foreclose on the collateral,[21] at the moment the security interest attaches to the collateral. A creditor, therefore, is classified as a secured creditor

---

[16] Utah Code Ann. § 70A-1-201(37)(a) (emphasis added).

[17] Section 101(51).

[18] Section 101(50).

[19] Utah Code Ann. § 70A-9a-203(2).

[20] Utah Code Ann. § 70A-9a-203(2)(a)-(c).

[21] *See* Utah Code Ann. § 70A-9a-201(1) (stating "a security agreement is effective according to its terms").

at the moment its security interest attaches to the collateral. Whether that security interest is then perfected does not change the creditor's secured status under the UCC or alter its treatment under the hanging paragraph.

### 3. A Creditor Can Have a Purchase Money Security Interest in a Motor Vehicle

Contrary to the Debtor's assertion, it is possible to have a purchase money security interest in a motor vehicle. The UCC provides that "[a] security interest in goods is a purchase money security interest[] to the extent that the goods are purchase money collateral with respect to that security interest."[22] "Goods" refers to "all things that are moveable when a security interest attaches,"[23] which is a term that includes motor vehicles.[24] The term "purchase money collateral" in § 70A-9a-103(2)(a) of the UCC means goods that secure "a purchase money obligation incurred with respect to that collateral."[25] A "purchase money obligation" refers to "an obligation of an obligor incurred . . . for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used."[26] A security interest in a motor vehicle, therefore, is classified as a purchase money security interest where the motor vehicle secures the debtor's obligation and was purchased using the financing that gave rise to the obligation.

The Debtor appears to be confusing the issue of attachment — the moment at which the creditor becomes secured — with perfection — the method by which the creditor gives notice to

---

[22] Utah Code Ann. § 70A-9a-103(2)(a).

[23] Utah Code Ann. § 70A-9a-102(44)(a).

[24] In the present case, the Tractors would more appropriately be classified as "equipment," which are a sub-category of goods, under Utah Code Ann. § 70A-9a-102(33).

[25] Utah Code Ann. § 70A-9a-103(1)(a).

[26] Utah Code Ann. § 70A-9a-103(1)(b).

third parties of its secured status. Although a secured creditor whose claim is unperfected may have its claim subjugated to those of more senior creditors, the unperfected secured creditor remains secured by virtue of its attached security interest.[27] While the Motor Vehicle Act may regulate the perfection of a security interest in some motor vehicles, it is the UCC that regulates the creation and attachment of the security interest itself. Thus, it is the UCC that dictates whether a creditor is secured and determines the nature of the security interest, including its classification as a purchase money security interest in a motor vehicle.

The Debtor's argument that a creditor can never have a purchase money security interest in a motor vehicle in Utah eviscerates the first part of the hanging paragraph related to 910-day vehicles.[28] Congress declared in the hanging paragraph, and neither party disputes, that a creditor whose collateral consists of a 910-day vehicle must hold a purchase money security in order to avoid being crammed down. If, as the Debtor alleges, a creditor can never possess a purchase money security interest in a motor vehicle then a creditor whose collateral is a 910-day vehicle would always be subject to the cram down of its claim. The hanging paragraph, particularly the first section, would have absolutely no meaning. This interpretation not only defies common sense but it violates a fundamental rule of statutory construction. As the Supreme Court has explained, "[i]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be

---

[27] The Court recognizes that § 544 gives the trustee the power to avoid unperfected security interests, thus rendering the creditor's claim unsecured. Section 544, however, is not applicable to the present action.

[28] It would also eviscerate the second part of the hanging paragraph where the creditor's collateral consists of a motor vehicle used for business purposes that was acquired within one year of the filing of the petition.

superfluous, void, or insignificant."[29]  To adopt the Debtor's argument would make the first part of the hanging paragraph superfluous, void, and insignificant.  The Court rejects the Debtor's argument in this regard.

### 4. Chrysler and Navistar Both Have Purchase Money Security Interests in Their Respective Collateral and Cannot be Crammed Down

Both Navistar and Chrysler have signed security agreements with the Debtor granting them a security interest in the Tractors.  The Tractors are goods that secure the Debtor's obligation to repay the loans, which obligation was incurred in order to allow the Debtor to acquire rights in the Tractors.  By definition under § 70A-9a-203 of the UCC, Navistar and Chrysler have purchase money security interests in the Tractors, both of which have value and were each purchased within one year of the filing of the Debtor's bankruptcy petition.  Consequently, the hanging paragraph prevents the Debtor from cramming down the secured claims of either Navistar or Chrysler.

### III.  CONCLUSION

The plain language of the hanging paragraph demonstrates that a creditor must have a purchase money security interest in "any other thing of value" purchased within one year preceding the filing of the bankruptcy petition in order to avoid having its claim crammed down under § 506.  The Bankruptcy Code defines security interests in a manner consistent with the UCC, which is the statute that regulates the creation of security interests, including purchase money security interests, in motor vehicles.  Both Navistar and Chrysler are secured by purchase money security interests in "any other thing of value" purchased within one year before the filing

---

[29]    *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotations omitted).

of the Debtor's petition, and the Debtor cannot cram down their secured claims. The Court overrules the Debtor's Objections to Proofs of Claim No. 2 and No. 10 and denies confirmation of his chapter 13 plan for failure to comply with § 1325(a). This denial of confirmation is without prejudice, and the Debtor may propose another chapter 13 plan consistent with this Memorandum Decision. A separate order will issue contemporaneously herewith.

_____END OF DOCUMENT_____



_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION OVERRULING OBJECTIONS TO PROOFS OF CLAIM NO. 2 AND NO. 10, AND DENYING CONFIRMATION OF THE DEBTOR'S CHAPTER 13 PLAN** will be effected through the Bankruptcy Noticing Center to each party listed below.

David T. Berry
Berry and Tripp, P.C.
5296 Commerce Drive, #200
Salt Lake City, UT 84107
    *Attorney for Debtor*

Weston L. Harris
Parsons Kinghorn Harris
111 E. Broadway, 11th Floor
Salt Lake City, UT 84111
    *Attorney for Navistar*

Kim R. Wilson
P. Matthew Cox
Snow, Christensen & Martineau
10 Exchange Place, 11th Floor
P.O. Box 45000
Salt Lake City, UT 84145
    *Attorneys for Chrysler*

J. Vincent Cameron, Trustee
47 West 200 South, Suite 600
Salt Lake City, UT 84101
    *Chapter 13 Trustee*